IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–02602–KMT

BARBARA BINION,

      Plaintiff,

v.

THE UNITED STATES OF AMERICA,

      Defendant.

---

## ORDER

---

      This matter is before the court on Defendant United States of America's "Motion to Dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)." (Doc. No. 28, filed Aug. 21, 2014.) Plaintiff's Response was filed on September 10, 2014 (Doc. No. 29), and Defendants' Reply was filed on September 24, 2014 (Doc. No. 30). For the following reasons, Defendant's Motion to Dismiss is GRANTED.

### FACTUAL BACKGROUND

      The following facts are taken from Plaintiff's Amended Complaint, filed March 5, 2014 (Doc. No. 23), as well as the parties' briefing with respect to this Order, and are undisputed unless otherwise noted.

### A.    *Plaintiff's Injury*

      On October 21, 2010, Plaintiff, a military dependent, entered into the Peterson Air Force Base Commissary in Colorado Springs, Colorado to do some shopping. Plaintiff reached into an

open-display refrigerator for a package of butter on an upper shelf in the cooler.  In order to reach the butter, Plaintiff had to place her feet under a "case bumper rail."  A case bumper rail is a six-inch tall, horizontal stainless steel rail installed into the ground in front of a display case for the purpose of protecting the display case from damage.  As Plaintiff turned to place the butter in her shopping cart, her foot became caught on one of the vertical posts supporting the case bumper rail.  Plaintiff fell sideways and hit her right knee on the case bumper rail and forcefully landed on the ground.  Plaintiff alleges that she sustained permanent physical injury and humiliation as a result of this incident.

**B.     *Background of Case Bumper Rail Installation at Peterson Air Force Base Commissary***

The Defense Commissary Agency (DeCA), a federal agency affiliated with the United States Department of Defense, operates commissaries for all the branches of the United States military.  *See generally* 32 C.F.R. § 383a.  DeCA's mission is to "[p]rovide an efficient and effective worldwide system of commissaries for the resale of groceries and household supplies at the lowest practical price (consistent with quality) to members of the Military Services, their families, and other authorized patrons, while maintaining high standards for quality, facilities, products, and service."  32 C.F.R. § 383a.3.  DeCA's responsibilities include "plan[ning], program[ming], budget[ing], design[ing], manag[ing], and ensur[ing] the execution of the commissary facilities' construction, modification, and repair programs."  32 C.F.R § 383a.5(a)(2).

In September 2004, DeCA formed the Facilities Standards Review Board (FSRB).  The FSRB was formed to review commissary facility standards and, with input from "all different areas of the agency," establish common facility standards that "meet the needs of the agency."

(Mot., Ex. 2, Rule 30(b)(6) Deposition of John Stuit [Rule 30(b)(6) Dep.], at 11:14-12:6.)  More

formally, the FSRB was chartered to "provide review of all Facilities Program technical

standards" and "ensure that all requests for criteria changes, marketing initiatives, equipment

changes, and other infrastructure requirements are compatible with DeCA policies and

directives, are consistent with approved engineering practices, and provide a cost-effective

solution to operationally-defined requirements." (*Id.,* Dep. Ex. 2 at 11.)

In November 2004, the FSRB first considered whether to make case bumper rails a

design standard in DeCA-operated commissaries.  (Resp., Ex. 2; Rule 30(b)(6) Dep. at 18:1-3.)

This issue arose because commissary display cases were being damaged by shopping carts,

maintenance activities and pallet jacks.  (Rule 30(b)(6) Dep., Ex. 2 at 13.)  The FSRB considered

both the "pros" and "cons" of the case bumper rails.  (*Id.*)  Ultimately, however, the issue was

deferred to allow better research into available preventative solutions.  (*Id.* at 3.)

The FSRB revisited the case bumper rails issue in May 2005.  (Resp., Ex. 3.)  The FSRB

considered several alternative systems for protecting commissary display cases, including a

McCue in-floor system, which apparently failed after only a few years of use; and several

systems that attached directly to the case, but were of limited availability in the United States.

(*Id.*)  Ultimately, the FSRB's recommendation was to "[m]aintain current criteria standard of

corner guard bollards until a rail protection system attached to the case framework is available in

the US" and to "[i]nstall the McCue in-floor or surface mounted systems on a case by case basis,

considering the limitations of these systems."  (*Id.*)

By November 2005, DeCA had decided to install the case bumper rails in "all ongoing

construction and design projects."  (Resp., Ex. 4; Rule 30(b)(6) Dep. 29:11-30:6.)  As of June

2013, case bumper rails systems had been adopted as a DeCA design standard.  (Mot., Ex. 3.)  A case railing bumper system has been installed in approximately 80-100 commissaries throughout the United States.  (Resp., Ex. 11.)

The contract for the Petersen Air Force Base Commissary was awarded on September 13, 2005 and was completed on June 12, 2007.  (Mot., Ex. 1, Deposition of John Stuit [Stuit Dep.], at 6:6-9.)  A "case bumper rail system" was added to the construction of the Peterson Air Force Base Commissary via a "Statement of Work" contract modification dated February 6, 2006.  (Stuit Dep., Ex. 4.) Accordingly, a case bumper rail system was installed in the Peterson Air Force Base Commissary according to DeCA specifications.  (Rule 30(b)(6) Dep. at 10:17-24.)

Prior to Plaintiff's injury, between 2003 and 2009, DeCA learned of at least 8 reported injuries associated with the case bumper rail system, nationally, two of which resulted in litigation.  (Resp., Exs. 5-11; *id.,* Ex. 11 at 7-8.)  DeCA has not formally reconsidered the use of case bumper rails since 2005.  (Rule 30(b)(6) Dep. at 34:4-8.)

## PROCEDURAL HISTORY

In her Amended Complaint, Plaintiff asserts a single claim pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, alleging violations of the Colorado Premises Liability Act, Colo. Rev. Stat. § 13-21-115, *et seq.*  Defendant's Motion to Dismiss asserts that this action must be dismissed for lacks subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), because Plaintiff's claim is subject to the discretionary function exception to the FTCA's waiver of sovereign immunity.  Defendant's Motion to Dismiss is fully briefed and ripe for the court's ruling.

## LEGAL STANDARD

The parties dispute the legal standard governing Defendant's Motion to Dismiss—Defendant maintains that its motion should be resolved under Federal Rule of Civil Procedure 12(b)(1) (Mot. at 6),[1] whereas Plaintiff asserts that the issue should be resolved under Rule 56 (Resp. at 5). The court agrees with Plaintiff.

"When, as here, a party's Rule 12(b)(1) motion challenges the facts upon which subject matter depends, 'a district court may not presume the truthfulness of the complaint's factual allegations.'" *Sizova v. Nat'l Inst. of Standards & Tech.,* 282 F.3d 1320, 1324 (10th Cir. 2002). Instead, the court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995) (citation omitted). Reliance on evidence outside the pleadings in addressing such a motion does not, as a general rule, convert the motion to one for summary judgment under Rule 56. *Id.* However, the Tenth Circuit has "recognized an exception to this general rule, where the 'jurisdictional question is intertwined with the merits of the case.'" *Sizova,* 282 F.3d at 1324 (quoting *Wheeler v. Hurdman,* 825 F.3d 257, 259 (10th Cir. 1987)). Under those circumstances, the court must convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. *Holt,* 46 F.3d at 1003. Subject matter jurisdiction and the merits of a case are considered to be intertwined "[w]hen subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case." *Wheller,* 825 F.2d at 259; *Sizova,* 282 F.3d at 1324.

---

[1] Defendant acknowledges in a footnote that the issue may be governed by Rule 56. (Mot. at 6 n.1.)

Here the court is vested with jurisdiction pursuant to § 1346(b) of the FTCA. *Esposito v. United States,* 368 F.3d 1271, 1273-74 (10th Cir. 2004). Accordingly, subject matter jurisdiction is dependent on the same statute giving rise to Plaintiff's substantive claim for relief. *Roueche v. United States,* No. 09-cv-00048-WDM-BNB, 2010 WL 3170758, at *2 (D. Colo. Aug. 10, 2010). Accordingly, because both parties have submitted evidence and neither party objects, the court will treat Defendant's Motion to Dismiss as a motion for summary judgment under Rule 56.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex,* 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.,* 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson,* 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

As already mentioned, Defendant argues that Plaintiff's sole claim for relief is barred by the discretionary function exception to the FTCA's waiver of sovereign immunity. The FTCA waives the United States Government's sovereign immunity for "personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The United States can be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The waiver of immunity does not cover the "failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This "discretionary function exception poses a jurisdiction prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter

jurisdiction." *Aragon v. United States,* 146 F.3d 819, 823 (10th Cir. 1998) (quotations omitted); *see also Domme v. United States,* 61 F.3d 787, 789 (10th Cir. 1995) ("If the discretionary function exception applies to the challenged conduct, the United States retains its sovereign immunity and the district court lacks subject matter jurisdiction to hear the suit").

The purpose of the discretionary function exception is "to protect policymaking by the executive and legislative branches of government from judicial 'second guessing.'" *United Garcia v. U.S. Air Force,* 533 F.3d 1170, 1176 (10th Cir. 2008) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814 (1984)). "Thus, it 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to sue by private individuals.'" *Id.* (quoting *Varig Airlines,* 467 U.S. at 808).

To determine whether conduct falls within the discretionary function exception, the court must apply the two-part test set forth in *Berkovitz v. United States,* 486 U.S. 531, 536 (1988). First, the court must consider whether the government conduct in question was "'discretionary," meaning "whether it was a matter of judgment or choice for the acting employee." *Berkovitz,* 486 U.S. at 536; *Lopez v. United States,* 376 F.3d 1055, 1057 (10th Cir. 2004). "Conduct is not discretionary if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Id.* (quoting *Berkovitz,* 486 U.S. at 536).

Here, the Code of Federal Regulations provides DeCA with the broad discretion to "plan, program, budget, design, manage, and ensure the execution of the commissary facilities' construction, modification and repair programs." 32 C.F.R. 383a.5(a)(2). Based on this authority, Plaintiff stipulates that there is no statute, regulation, or policy mandating a particular

course of action with respect to the hazard allegedly created by the case bumper rail system. (Resp. at 7.) Accordingly, the court finds that the first *Berkovitz* element is established.

The second *Berkovitz* element asks "whether the decision in question is one requiring the exercise of judgment based on considerations of public policy." *Garcia*, 533 F.3d at 1176. "Decisions that require choice are exempt from suit under the FTCA only if they are 'susceptible to policy judgment' and involve an exercise of 'political, social, [or] economic judgment.'" *Duke v. Dep't of Agric.*, 131 F.3d 1407, 1410 (10th Cir.1997) (quotations omitted). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert,* 499 U.S. 315, 324 (1991). The court does not consider the decision-maker's "subjective intent in exercising discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Garcia,* 553 F.3d at 1176 (quoting *Gaubert*, 499 U.S. at 325). The court also does not ask "'whether policy analysis is the *actual reason* for the decision in question.'" *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008) (quoting *Duke,* 131 F.3d at 1413) (emphasis in original). Nor does the discretionary function exception turn on whether the government's conduct was negligent or wrong. *Duke,* 131 F.3d at 1407 (quoting 28 U.S.C. § 2680(a)) (the discretionary function "exception applies 'whether or not the discretion involved be abused.'").

As discussed above, the applicable regulation affords DeCA wide discretion to plan, budget, design, and manage the construction, modification, and repair of its commissaries. 32 C.F.R. § 383a.5(a)(2). As such, the court must presume that the discretionary decision to install

the case bumper rail system at the Peterson Air Force Base and other DeCA-run commissaries was grounded in policy. *Gaubert,* 499 U.S. at 324.

Moreover, Defendant has submitted evidence affirmatively demonstrating that, in determining an appropriate response to the damage caused to display cases by carts, maintenance activities, and pallet jacks, the FSRB considered a number of policy-driven factors. More specifically, in at least two meetings, the FSRB explicitly considered a number of economic-based benefits and drawbacks of the case bumper rail system and other alternatives—including, but not limited to, the cost, efficacy, durability, and availability of these systems. (30(b)(6) Dep., Ex 3 at 3, 13; Ex. 4 at 4-6.) *See also Harrell v. United States,* 443 F.3d 1231, 1236 (10th Cir. 2006) (citing *Variq Airlines,* 467 U.S. at 820, & *Tew v. United States,* 86 F.3d 1003, 1006 (10th Cir. 1996)) (recognizing that the efficient allocation of agency resources, including economic resources, represents a policy choice). Further, although it did not explicitly do so, the FSRB could have also factored in other policy-based considerations, such as customer safety and aesthetics. *Lopez,* 376 F. at 1060 (decision regarding placement of mailboxes was susceptible to such policy considerations as timeliness of delivery, efficiency of route, customer satisfaction, and patron and postman safety); *Fothergill v. United States,* 566 F.3d 248, 253 (1st Cir. 2009) (decisions regarding whether to install curbs or barriers in a post office parking lot, when to do so, and how to array them were "susceptible to policy analysis" because they were informed by a myriad of factors, including "efficiency, safety, aesthetics, and cost."); *Baum v. United States,* 986 F.2d 716, 722 (4th Cir. 1993) (design and construction decisions regarding parkway guardrails were just the kind of planning-level decisions that are protected by the discretionary function exception).

Plaintiff does not dispute that the initial decision to install the case bumper rail system in commissaries was a policy-based decision.  Instead, Plaintiff asserts that her claim is actually premised on "Defendant's ongoing failure to recognize its own records of multiple injuries occurring as a result of the railings," which was not susceptible to policy analysis.  (Resp. at 8.) In particular, Plaintiff goes to great lengths to show how DeCA's failure to respond to the known danger created by case bumper rails violated Colorado's Premises Liability Act, and then asserts, in a largely conclusory fashion, that this "decision not to act" was not "grounded in social, economic or political policies." [2] (*Id.* at 10.)

To the extent that Plaintiff may be arguing that the court has jurisdiction in this action because DeCA violated Colorado's Premises Liability Act, she "put[s] the cart before the horse." *Sydnes,* 523 F.3d at 1185.  The court "reach[es] the question whether the federal government is liable for breaching some duty of care under state law if (and only if) [the court] can first find an applicable waiver of sovereign immunity."  *Id.* (citing *Domme v. Unite States,* 61 F.3d 787, 780 (10th Cir. 1995)).

Further, the court agrees with Defendant that a failure to act upon reports of injuries associated with the case bumper rails is subject to the same policy considerations as the original decision to install the system in DeCA commissaries.  "[A] failure to act can be a policy decision"; in fact, even a "failure to think about acting may still be 'susceptible to policy

_____

[2] Plaintiff also cites to *O'Toole v. United States,* 295 F.3d 1029 (9th Cir. 2002), and *Indian Town Co. v. United States,* 350 U.S. 61, 76 (1955), for the proposition that the government's failure to maintain its property is not subject to the discretionary function exception.  These cases are inapposite, however, as Plaintiff does not allege that the case bumper rails installed at the Peterson Air Force Base commissary were improperly maintained.  Instead, her allegations focus on whether the case bumper rails should have been modified, replaced, or removed as a safety hazard.

analysis.'" *Duke,* 131 F.3d at 1410.  In responding to the reports of prior injuries from the case

bumper rail system, DeCA had a number of choices:  it could have modified, removed, or

replaced the rail system, or done nothing.  "The freedom to make any of these choices—socially

desirable or not— is a necessary consequence of [DeCA's] discretion."  *Metter v. U.S. Army*

*Corps of Eng'rs,* 9 F. Supp. 3d 1090, 1100 (D. Neb. 2014).  And any of these choices would be

susceptible to the same policy considerations as the decision to install the case bumper rail

system in the first place.  Indeed, to respond to the reported injuries from the case bumper rail

system, at a minimum, DeCA or the FSRB would have had to balance the benefit to customer

safety of modifying, replacing, or removing the systems against the economic cost of doing so in

commissaries throughout the country.

Plaintiff's Amended Complaint also alleges that DeCA should have warned customers,

including Plaintiff, of the dangers posed by the rail system.  (Am. Compl. ¶ 12.)  The Tenth

Circuit has held on two occasions that a government actor's failure to warn of a known hazard

fell outside of the discretionary function exception.  *Boyd v. United States ex rel. U.S. Army,*

*Corps of Eng'rs,* 881 F.2d 895, 897-898 (10th Cir. 1989) (holding that the government's "failure

to warn swimmers of a dangerous condition in a popular swimming area does not implicate any

social, economic, or political policy judgment with which the discretionary function exception

properly is concerned."); *Duke,* 131 F.3d at 1412 (holding that the discretionary function

exception did not exempt the government's decision not to warn of falling rocks at a

campground in the Gila National Forest).

However, in subsequent cases, the Tenth Circuit recognized that *Boyd and Duke* "do[]

not stand for the proposition that all failure to warn claims are outside the scope of the

discretionary function exception." *Kiehn v. United States,* 984 F.2d 1100, 1104 (10th Cir. 1993) (citing *Zumwalt,* 928 F.2d 951, 955 (10th Cir. 1991).  Instead, the court must determine whether the government's failure to warn could be considered part of a policy decision.   *Id.*

The court finds that even the relatively minor remedial action of warning customers implicates the same policy considerations underlying the more significant decisions to modify, replace, or remove the allegedly hazardous case bumper rail system.  Specifically, a decision to install a safety warning falls within DeCA's discretion to plan, budget, and design commissary modifications or repairs.  Further, unlike in *Boyd* and *Duke,* the injury hazard in this case was not limited to single swimming or camping area in a federally-managed recreational area—instead, the case bumper rail system has been installed in a number of commissaries throughout the country.  As such, a decision regarding whether to warn customer of the danger allegedly associated with the case bumper rails would require that the FSRB consider whether eight reported injuries over a seven-year period demonstrated an injury risk sufficient to justify the cost and effort of installing warnings on commissary display cases throughout the country.  Ultimately, even if the FSRB's failure to place warnings on case displays was wrong or negligent, it was clearly a policy-based decision within DeCA's discretion.

Altogether, the court finds that Plaintiff has failed to submit any facts or law to overcome the presumption that decisions made pursuant to DeCA's discretion over the construction, modification, and repair of commissary facilities are grounded in policy.  *Gaubert,* 499 U.S. 324.  As such, the court finds that there is no genuine factual dispute that the discretionary function exception applies in this case.  Accordingly, the court finds that it lacks subject matter jurisdiction to consider Plaintiff's claims.

Therefore, for the foregoing reasons, it is

ORDERED that Defendant's "Motion to Dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)" (Doc. No. 28) is GRANTED and this action is dismissed without prejudice for lack of subject matter jurisdiction.  It is further

ORDERED that the combined Trial Preparation Conference and Final Pretrial Conference set for November 6, 2014 and the Bench Trial set to commence on December 8, 2014 are VACATED and Plaintiff's Motion to Appear by Telephone is DENIED as moot.  It is further

ORDERED that Defendant may have its costs by filing a Bill of Costs with the Clerk of Court within fourteen days of the entry of judgment, pursuant to Fed. R. Civ. P. 54(d) and D.C.COLO.LCivR 54.1

Dated this 31st day of October, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge